UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHROMA L.,

                Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,[1]

                Defendant.

CASE NO. C19-5187-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Disability Insurance Benefits (DIB) and partially denied his application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1955.[2] He has a GED, and has worked as a construction

---

[1] Andrew M. Saul is now the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted for Nancy A. Berryhill as defendant in this suit.

[2] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 1

worker and temporary laborer. (AR 176-77.)

Plaintiff applied for DIB and SSI in January 2010, alleging disability as of January 1, 2002.[3] (AR 57-58, 135-48.) Those applications were denied and Plaintiff timely requested a hearing. (AR 61-64, 68-81.)

On November 15, 2011, ALJ Robert Kingsley held a hearing, taking testimony from Plaintiff and a vocational expert (VE). (AR 34-56.) On December 12, 2011, the ALJ issued a decision finding Plaintiff not disabled. (AR 16-28.) Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on June 21, 2013 (AR 1-6), making the ALJ's decision the final decision of the Commissioner.

Plaintiff sought judicial review of this final decision of the Commissioner, and the U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded the case for further administrative proceedings. (AR 547-55.) ALJ Kingsley held another hearing on February 18, 2015, taking testimony from Plaintiff, a VE, and a medical expert (ME). (AR 494-542.) On July 31, 2015, the ALJ again found Plaintiff not disabled. (AR 455-86.) The Appeals Council declined to assume jurisdiction of the case on January 12, 2016. (AR 438-44.)

Plaintiff sought judicial review of the ALJ's decision, and the U.S. District Court for the Western District of Washington reversed the ALJ's decision and remanded for further administrative proceedings. (AR 1000-13.) ALJ S. Andrew Grace held a hearing on November 8, 2017, taking testimony from Plaintiff and a VE. (AR 905-38.) On April 5, 2018 the ALJ found Plaintiff disabled as of February 1, 2015, but not disabled before that date.[4] (AR 1068-82.)

---

[3] At the 2011 administrative hearing, Plaintiff amended his alleged onset date to February 25, 2010. (AR 38-40.)

[4] While this case was pending, Plaintiff filed a subsequent application for SSI, which was approved by the State agency on initial review, as of February 16, 2016. (AR 1019, 1022-35, 1154-66.) Thus, the

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 2

Plaintiff sought Appeals Council review, but the Appeals Council found no reason to assume jurisdiction. (AR 892-98.) Plaintiff now seeks judicial review of the ALJ's decision.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (AR 1071.) At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found that since the alleged onset of disability, Plaintiff's degenerative disc disease; sciatica; post-traumatic stress disorder; generalized anxiety disorder; major depressive disorder; learning disorder, not otherwise specified; alcohol dependence; dysthymic disorder; reading disorder; and history of substance abuse were severe. (AR 1071.) The ALJ also found that beginning on February 1, 2015, Plaintiff's right leg pain became an additional severe impairment. (AR 1071.)

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that since the alleged onset date, none of Plaintiff's impairments met or equaled the criteria of a listed impairment. (AR 1071-73.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found that before February 1,

---

Appeals Council instructed the ALJ to consider only the period prior to that disability onset date, on remand. (AR 1019.)

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 3

2015, Plaintiff was capable of performing medium work, with additional limitations: he was limited to simple, routine, repetitive tasks consistent with unskilled work. He could have no public contact and occasional superficial contact with co-workers. He could have occasional contact with supervisors. He was limited to low-stress work, which is defined as work requiring few decisions/changes. He could perform at a standard or ordinary pace, but not at a strict production rate pace in which the individual had no control over the speed of the work. Work tasks that were assigned must have been capable of instruction through one-on-one, hands-on demonstration rather than written instruction. (AR 1073-74.) Beginning on February 1, 2015, Plaintiff had the same RFC as described above, but was limited to light work. (AR 1078.) With those assessments in mind, the ALJ found Plaintiff had not been able to perform any past relevant work since the alleged onset date. (AR 1079.)

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the VE's assistance, the ALJ found that before February 1, 2015, Plaintiff was capable of transitioning to other representative occupations, such as hand packager. (AR 1080.) The ALJ found that as of February 1, 2015, Plaintiff could not perform any jobs that exist in significant numbers and therefore became disabled on that date. (AR 1081.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

(9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in (1) assessing his RFC, (2) discounting a third-party report, and (3) finding at step five that he could work as a hand packager. Dkt. 14 at 1. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

## RFC

In challenging the ALJ's RFC assessment, Plaintiff essentially challenges the ALJ's assessment of certain medical opinions, which contain limitations that the ALJ did not account for in the RFC assessment. Assuming that the ALJ properly discounted those opinions, the ALJ did not err in failing to include limitations identified in those opinions in the RFC assessment. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). The Court therefore must consider whether the ALJ erred in discounting the challenged medical opinions.

Legal standards

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted by another physician, a treating or examining physician's opinion may be rejected only for "'clear and convincing'" reasons. *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where contradicted, a treating or examining physician's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id*. at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ may reject physicians' opinions "by setting out a detailed and thorough summary of the facts and conflicting

clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes*, 881 F.2d at 751). Rather than merely stating her conclusions, the ALJ "must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

<u>Loren McCollom, Ph.D.</u>

Dr. McCollom performed a consultative psychological evaluation of Plaintiff in February 2010. (AR 238-47.) The ALJ gave significant weight to most of Dr. McCollom's opinion, but specifically discounted his opinion that Plaintiff was moderately to severely impaired in his ability to withstand stress, because the ALJ found that found limitation to be unsupported and inconsistent with the narrative portion of Dr. McCollom's opinion. (AR 1075.)

Plaintiff contends that Dr. McCollom's opinion regarding his ability to withstand stress is actually consistent with the remainder of Dr. McCollom's opinion. Dkt. 14 at 7. Plaintiff provides no specific examples of consistency with or support from the remainder of Dr. McCollom's opinion, however. The Court's review of Dr. McCollom's opinion confirms that the ALJ's assessment is supported by substantial evidence. For example, Dr. McCollom noted that Plaintiff became "more at ease as the evaluation progressed, demonstrating a good sense of humor. Throughout, he demonstrated a positive attitude and a willingness to do well, even when he had difficulty." (AR 239.) Dr. McCollom also described Plaintiff's ability to manage his finances, attend events in the community, socialize with friends, and use public transportation to attend the appointment, all of which suggest some ability to withstand stress. (AR 238, 241.) Furthermore, as noted in the ALJ's decision, the treatment notes in the record reflect routine complaints and conservative care, which could reasonably suggest a lack of disabling limitations, and multiple examiners suspected malingering or exaggeration, which also undermines Plaintiff's claim of

disability. (AR 1074-75.)

Even if Dr. McCollom's report could also be interpreted as consistent with his opinion regarding Plaintiff's ability to withstand stress, the Court finds that the ALJ's interpretation is nonetheless supported by substantial evidence and is therefore affirmed. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Nichole Seymanski, Psy.D.

Dr. Seymanski examined Plaintiff in August 2010 and completed a DSHS form opinion describing Plaintiff's symptoms and limitations. (AR 275-87.) The ALJ gave partial weight to Dr. Seymanski's opinion, finding that some of the limitations described were consistent with the record, but discounted her opinion that Plaintiff was markedly limited in his ability to learn new tasks and respond appropriately to pressures and expectations. (AR 1078.) The ALJ found that those two limitations were inconsistent with the medical records and inconsistent with "the fairly benign narrative portion of the evaluation." (*Id.*)

As support for her opinion that Plaintiff was markedly limited in his ability to learn new tasks, Dr. Seymanski cited Plaintiff's performance on short-term memory testing and his below-average IQ. (AR 280.) As support for her opinion on Plaintiff's ability to respond appropriately to pressures and expectations, Dr. Seymanski cited Plaintiff's activities of daily living, the mental status examination and clinical interview, Plaintiff's "possible cognitive issues," and his current alcohol use. (*Id.*) The ALJ noted elsewhere in his decision that Dr. Seymanski noted testing irregularities that made her suspect malingering, and that other evaluators also diagnosed or suspected malingering, which undermines the accuracy of Plaintiff's subjective statements and testing. (AR 1074 (referencing *inter alia* AR 282).) And again, as noted in the ALJ's decision,

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 7

the treatment notes in the record reflect routine complaints and conservative care, which could reasonably suggest a lack of disabling limitations. (AR 1074-75.) The ALJ's decision thus explains how Dr. Seymanski's conclusions are inconsistent with other parts of the record, and the ALJ did not err in discounting her opinion based on that inconsistency. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

Moreover, as found by the ALJ, Dr. Seymanski's report contains notes that also reasonably contradict her conclusions, such as her indication that Plaintiff paid adequate attention to his activities of daily living and denied impairments in that area (AR 280) and her finding that Plaintiff's limitations would be expected to persist for only 3-6 months (AR 281). Dr. Seymanski also noted that Plaintiff reported that one of his primary barriers to employment was his status as a sex offender (AR 275, 281), which undermines an opinion that cannot work because he is disabled. Because Dr. Seymanski's opinion does contain inconsistencies, the ALJ did not err in discounting it. *See Morgan*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies within and between physicians' reports).

Allen Ratcliffe, Ph.D.

Dr. Ratcliffe examined Plaintiff twice, in 2012 and 2014, and completed DSHS form opinion on both occasions. (AR 745-50, 762-66.) The ALJ noted that Dr. Ratcliffe found that Plaintiff was markedly or severely limited in almost all functional areas, which the ALJ found inconsistent with the record showing routine complaints, conservative care, and greater functioning. (AR 1078.) The ALJ also noted that Dr. Ratcliffe was unaware of the multiple other opinions reflecting concerns about malingering or exaggeration. (*Id.*)

Plaintiff contends that the ALJ's reasons for discounting Dr. Ratcliffe's opinions are vague

and non-specific (Dkt. # 14 at 12), but the Court disagrees. The ALJ reasonably found that Plaintiff's treatment was routine and conservative, which is a legitimate reason to discount an opinion describing disabling limitations. *See, e.g.*, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (upholding rejection of treating physician's opinion based on discrepancy between the opinion and the physician's description of the claimant and prescription of a conservative course of treatment). Furthermore, the evidence of malingering/exaggeration in the medical record also undermines Dr. Ratcliffe's opinions, which were based entirely on Plaintiff's self-reported symptoms without access to records or knowledge of the malingering/exaggeration. (AR 746, 762.) Because the ALJ provided specific, legitimate reasons to discount Dr. Ratcliffe's opinions, Plaintiff has not shown error in the ALJ's assessment.

Robert McDevitt, M.D.

Dr. McDevitt testified at the second administrative hearing in February 2015 as an ME. (AR 498-515.) He testified that *inter alia* Plaintiff would be limited to performing one-step tasks. (*See* AR 502.) The prior ALJ asked the ME whether his opinion on that issue would be impacted by the fact that Plaintiff's past work included semiskilled jobs or the fact that he earned a GED, and the ME said that those facts would change his opinion. (AR 503-04.) The ALJ deciding this decision referenced the fact that Plaintiff did not in fact perform semiskilled jobs in the past, but he did work at unskilled jobs with a specific vocational preparation (SVP) of 2, which indicates that he was able to do more than only one-step work. (AR 1076.) Thus, even though the prior ALJ misrepresented the skill level of Plaintiff's past work, the current ALJ found that the ME's opinion that Plaintiff would be limited to one-step work is nonetheless inconsistent with Plaintiff's SVP 2 work history. (*Id.*) The ALJ also noted that a limitation to one-step work is not supported in the medical evidence. (*Id.*) Based on these inconsistencies, the ALJ found the ME's testimony

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 9

to be inconsistent with the record and therefore entitled to limited weight. (*Id.*)

Plaintiff argues that the ALJ erred in failing to specify which part of the medical record does not support the ME's limitation to one-step work. Dkt. 14 at 13. But the ALJ stated that the record does not support the ME's opinion, and therefore a citation to the record would be unavailing. Plaintiff himself does not cite any medical evidence indicating that he was in fact limited to one-step tasks; instead, examiners found Plaintiff capable of completing simple/1-2-step and/or three-step tasks, which would exceed the one-step limitation described by the ME. (*See, e.g.*, AR 246, 280, 766.)

Furthermore, as noted by the ALJ, Plaintiff's work history indicates that he was capable of performing jobs involving more than only one-step tasks, as the VE testified that there are no jobs that involve only one-step tasks. (AR 934-36.) Although, as Plaintiff emphasizes (Dkt. 14 at 13), the ALJ found that Plaintiff could no longer perform his past work, this work history is nonetheless relevant to the ALJ's disability determination because Plaintiff's impairments are longstanding. *See, e.g.*, *Drouin v. Sullivan*, 966 F.2d 1255, 1258 (9th Cir. 1992) ("She was able to hold two previous jobs with a fair amount of success, and even if those particular jobs are, as she claims, too taxing for her, the vocational counselor testified that she is qualified for thousands of less strenuous jobs.").

For the first time in his Reply brief, Plaintiff argues that the ME testified that Plaintiff met a listing and the ALJ erred in failing to discuss this testimony. Dkt. 16 at 2-5. This argument is not supported by a review of the ME's testimony. The ME identified various diagnoses as falling under different listing categories, but he did not explicitly testify that Plaintiff met any of those listings. (AR 501-03.) Instead, he opined that Plaintiff could probably perform simple, repetitive, non-public work. (AR 504.) When asked about whether the evidence shows that Plaintiff meets

a listing, the ME specifically testified that he disagreed with any such evidence. (AR 511-14.) Moreover, the Court notes that in Plaintiff's exceptions to the ALJ's 2015 decision discussing the ME's testimony, Plaintiff raised concerns about the ME's testimony but did not argue that the ME testified that he met a listing. (AR 446-50.) Thus, although some of the ME's testimony could appear constitute an opinion that Plaintiff meets a listing when taken out of context, when his testimony is reviewed in its entirety, it is clear that the ME did not so testify. Thus, Plaintiff has failed to establish error in the ALJ's assessment of the ME's testimony.

## Lay evidence

Plaintiff's social worker, Robert Badgley, completed a third-party function report in February 2015, eight days before the amended alleged onset date. (AR 194-201.) The ALJ noted that Mr. Badgley stated that Plaintiff's barriers to employment "appeared to be related to difficulties with understanding, following instructions, hearing, seeing, short term memory, and learning." (AR 1078.) The ALJ found Mr. Badgley's opinion to be "not entirely supported by the medical records[,]" and also noted that it predated the adjudicated period. (*Id.*)

An ALJ's reasons to discount a lay witness statement must be germane. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness."). Neither of the ALJ's reasons here are germane. Lack of support from the medical record is not a germane reason to discount a lay opinion, according to the Ninth Circuit. *See Diedrich v. Berryhill*, 874 F.3d 634, 640-41 (9th Cir. 2017). And although an opinion that predates the adjudicated period typically has limited value, here Mr. Badgley's opinion predates the adjudicated period by only eight days, and there is nothing in the record to suggest any significant change in Plaintiff's conditions in that short time period, such that Mr. Badgley's opinion would no longer describe Plaintiff's condition. *See*

*Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

The Court finds that the ALJ's erroneous reasoning is harmless, however, in light of Mr. Badgley's limited relationship with Plaintiff and his complete reliance on Plaintiff's self-reported limitations in describing Plaintiff's condition. Mr. Badgley indicated that he knew Plaintiff in the context of spending 1-2 hours to help him complete his agency paperwork. (AR 194.) Mr. Badgley had no apparent access to any information about Plaintiff's activities and limitations other than what Plaintiff told him, and Mr. Badgley's statements mirror what Mr. Badgley wrote on Plaintiff's own report. (*Compare* AR 194-201 *with* AR 214-21.) The ALJ discounted Plaintiff's self-report and Plaintiff has not challenged that finding, and therefore the ALJ's proper reasons for discounting Plaintiff's self-report apply with equal force to Mr. Badgley's reiteration of that self-report. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")). Accordingly, the Court finds no harmful error in the ALJ's assessment of Mr. Badgley's report.

### Step five

Plaintiff argues that the ALJ erred in finding that he could perform the job of hand packager at step five, because the hypothetical posed to the VE did not include all of the limitations the ALJ had credited. *See Lewis v. Apfel*, 236 F.3d 503, 517-18 (9th Cir. 2001) ("Hypothetical questions asked of the [VE] must 'set out all of the claimant's impairments.' If the record does not support the assumptions in the hypothetical, the [VE's] opinion has no evidentiary value." (quoting *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1278, 1279 (9th Cir. 1987))).

ORDER RE: SOCIAL SECURITY
DISABILITY APPEAL
PAGE - 12

Plaintiff fails to identify any credited limitation that was omitted from the VE hypothetical, however. The Court's review of the record indicates that the ALJ's hypothetical mirrors the RFC assessment. (*Compare* AR 929-931 *with* AR 1073-74.) Much of Plaintiff's briefing on the step-five issue describes limitations found in medical opinions that were discounted by the ALJ. Dkt. 14 at 17-18. But an ALJ does not err in crafting a VE hypothetical that reflects *credited* evidence, rather than the evidence that was properly discounted. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1217-18 (9th Cir. 2005) (holding that the ALJ's RFC assessment need not account for limitations or impairments that the ALJ properly rejected). As explained *supra*, the ALJ did not err in discounting the opinions of Dr. McDevitt or Dr. Kester, and therefore did not err in failing to account for limitations they identified when crafting a VE hypothetical.

To the extent that Plaintiff contends that the ALJ erred in failing to account for "limitations" identified at step three (Dkt. 14 at 18), the "paragraph B" ratings mentioned at step three (AR 1072-73) do not equate to limitations in an RFC assessment, but are instead used to determine whether Plaintiff's impairment meets a listing. *See* Social Security Ruling 96-8p, 1996 WL 374184, at *4 (Jul. 2, 1996). The ALJ continued beyond step three to assess Plaintiff's RFC, and properly accounted for all of the limitations identified in the RFC assessment in the VE hypothetical. Thus, Plaintiff has failed to establish that the ALJ erred at step five in relying on VE testimony rendered in response to a complete hypothetical.

To the extent that Plaintiff raises concerns, for the first time in his Reply brief (Dkt. 16 at 8-9), that the VE hypothetical failed to account for his functional illiteracy, Plaintiff does not acknowledge that the ALJ's RFC assessment and VE hypothetical included a requirement that Plaintiff's assigned work tasks must be capable of being explained "through one-on-one, hands-on demonstration rather than written instruction." (AR 931, 1074.) Plaintiff has not shown that

this limitation inadequately addresses his limited reading ability, and thus has failed to meet his burden to show harmful legal error in the ALJ's step-five findings.

## **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this 1st day of October, 2019.

Mary Alice Theiler
United States Magistrate Judge